UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X

JULIAN ROSARIO, *on behalf of himself and all*
*others similarly situated*,

                            Plaintiff,

       -against-

VALENTINE AVENUE DISCOUNT STORE, CO.,
INC., EL MUNDO OF 133RD STREET, INC., EL
MUNDO OF AMSTERDAM, INC., EL MUNDO
OF JAMAICA, INC., EL MUNDO OF
KNICKERBOCKER, INC., EL MUNDO OF
SOUTHERN BOULEVARD, INC.,  EL MUNDO
OF STEINWAY, INC., EL MUNDO OF WILLIS
AVENUE, INC., AMERICAN PLACE AT 86TH
STREET, INC., AMERICAN PLACE AT FOURTH
AVENUE, INC., AMERICAN PLACE AT
NOSTRAND, INC., AMERICAN PLACE OF
BROADWAY, INC., 13TH AVENUE
BERGAMENT HOME CENTER, INC., 146 ST.
DISCOUNT CENTER CO., INC., 158 ST.
DISCOUNT CENTER CO., INC., AMERICAN
DEPARTMENT STORE, INC., BERGAMENT
OUTLET CENTER, INC., ELMUNDO HOLDING
CO., INC., GRAND CONCOURSE DISCOUNT,
INC., GRANT DEPARTMENT STORE CO., INC.,
WILLIS AVENUE DISCOUNT CENTER CO., INC.,
DOMINICANO DEPARTMENT STORE, INC.,
EL MUNDO DEPARTMENT STORE, INC., FIVE
STAR DEPARTMENT STORE, INC., HAMILTON
VARIETY CO., INC., AMERICAN HOME CTR.,
KINGSTONE DISTRIBUTORS CO., INC., and
RAYMOND SROUR,

                         Defendants.

---------------------------------------------------------------X

**MEMORANDUM AND ORDER**
**10 CV 5255 (ERK) (LB)**

**BLOOM, United States Magistrate Judge:**

       Plaintiff Julian Rosario brings this action on behalf of himself and all others similarly

situated against defendants Valentine Avenue Discount Store Co., Inc., El Mundo of 133rd Street,

Inc., El Mundo of Amsterdam, Inc., El Mundo of Jamaica, Inc., El Mundo of Knickerbocker, Inc., El Mundo of Southern Boulevard, Inc., El Mundo of Steinway, Inc., El Mundo of Willis Avenue, Inc., American Place at 86th Street, Inc., American Place at Fourth Avenue, Inc., American Place at Nostrand, Inc., American Place of Broadway, Inc., 13th Avenue Bergament Home Center, Inc., 146 St. Discount Center Co., Inc., 158 St. Discount Center Co., Inc., American Department Store, Inc., Bergament Outlet Center, Inc., Elmundo Holding Co., Inc., Grand Concourse Discount, Inc., Grant Department Store Co., Inc., Willis Avenue Discount Center Co., Inc., Dominicano Department Store, Inc., El Mundo Department Store, Inc., Five Star Department Store, Inc., Hamilton Variety Co., Inc., American Home Ctr., Kingstone Distributors Co., Inc., (collectively, the "Stores") and Raymond Srour to recover unpaid overtime compensation and minimum wages pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and the New York Labor Law.   Plaintiff moves for: (1) conditional certification as a collective action pursuant to 29 U.S.C. § 216(b); (2) production of the names and personal information of potential opt-in plaintiffs; and (3) authorization to post and circulate a proposed notice of pendency to potential opt-in plaintiffs.   The Honorable Edward R. Korman referred plaintiff's motion to me.   For the following reasons, plaintiff's motion is granted.[1]

## BACKGROUND

The Stores are independently incorporated discount department stores.  (Compl., ¶¶ 8-34; Ans., ¶¶ 8-34.)  Defendant Srour serves as the chairman or chief executive officer of each of the

---

[1] I need not issue a Report and Recommendation as a Magistrate Judge may order the relief sought in this motion. See Patton v. Thomson Corp., 364 F. Supp. 2d 263, 265-66 (E.D.N.Y. 2005) (a magistrate judge may order conditional certification and class notice under the FLSA).

Stores.  (Compl., ¶¶ 8-34; Ans., ¶¶ 8-34.)  Plaintiff alleges that the Stores are commonly owned and managed, and operate as a chain of twenty-seven department stores.  (Compl., ¶ 35.)

Plaintiff worked at two of the Stores from 2006 through 2010.  (Docket entry 20-5, Rosario Decl., ¶¶ 2, 10, 13.)  In August 2006, plaintiff was hired to work in the electronics department of Valentine Avenue Discount Store Co., Inc.  (Id. at ¶¶ 2-3.)  Plaintiff's job duties included receiving merchandise, helping customers, selling merchandise, pricing merchandise, cleaning, and making repairs in the store.  (Id. at ¶¶ 3, 6, 10, 13.)  Plaintiff alleges he worked ten hours per day for six days per week and was paid a weekly salary of $300.  (Id. at ¶¶ 4-5.)  Although plaintiff worked six days per week, he was instructed to clock in for only four days.  (Id. at ¶ 7.)  Moreover, two dollars were deducted from plaintiff's weekly salary to pay for the bathroom to be cleaned.  (Id. at ¶ 8.)  In 2007, plaintiff's pay was increased to a weekly salary of $325, and in 2008 plaintiff was transferred to the furniture department of Valentine Avenue Discount Store Co., Inc.  (Id. at ¶¶ 6, 9.)  In 2009, plaintiff was transferred to Grand Concourse Discount, Inc., where he worked the same hours as before, but was paid a weekly salary of $400.  (Id. at ¶¶ 10-12.)   In 2010, plaintiff returned to Valentine Avenue Discount Store Co., Inc. and worked in the detergents department.  (Id. at ¶ 13.)  Plaintiff states that he only worked five days per week in the weeks preceding the termination of his employment.  (Id. at ¶ 17.)  Plaintiff claims that he was not paid the minimum wage and was not properly compensated for his overtime hours while employed by Valentine Avenue Discount Store Co., Inc. and Grand Concourse Discount, Inc.  (Id. at ¶¶ 5, 9, 12.)

Opt-in plaintiff Maria Gomez worked at six of the Stores from 1992 through 2009.  (Docket entry 20-6, Gomez Decl., ¶¶ 1, 10, 13, 15, 23, 33.)  In 1992, Gomez was hired to work in the curtains department of El Mundo of 133rd Street, Inc.  (Id. at ¶¶ 2-3.)  Her job duties

included receiving merchandise, helping customers, selling merchandise, pricing merchandise, cleaning, and arranging displays.  (Id. at ¶ 3.)  Gomez alleges she worked nine and a half hours per day for seven days per week and was paid a weekly salary of $180.  (Id. at ¶¶ 4-5.)  In 1994, 1995 and 1996, her weekly pay was increased to $207, $220, and $240, respectively.  (Id. at ¶¶ 7-9.)  In 1997, Gomez was transferred to the 157[2]th Street location, where she worked nine and a half hours per day for six days per week and was paid a weekly salary of $260.  (Id. at ¶¶ 10-12.)  For the next year, Gomez was periodically sent to work at 146 St. Discount Center Co., Inc. for fifteen-day stretches.  (Id. at ¶ 13.)  After suffering a back injury on the job in 1998, Gomez stopped working for defendant Srour.  (Id. at ¶ 14.)  Gomez started working for defendant Srour again in 2000 at the El Mundo store located on 203[3]rd Street.  (Id. at ¶ 15.)  From 2000 until 2007, Gomez worked nine and a half hour shifts in the curtains department and was paid $6.25 per hour.  (Id. at ¶¶ 16, 20, 21.)  Although Gomez worked until at least 7:30 p.m. each night, she was required to clock out at 7:00 p.m. and was not paid for the time she worked after she was required to clock out.  (Id. at ¶¶ 20-21.)  In 2007, Gomez was transferred to Valentine Avenue Discount Store Co., Inc., where her hours remained the same, but her hourly pay rate was reduced to $5.75.  (Id. at ¶¶ 23-24.)  Moreover, Gomez states that four dollars were deducted from her paycheck every week while at Valentine Avenue Discount Store Co., Inc. to pay for the bathroom to be cleaned.  (Id. at ¶ 27.)  At the end of 2008, Gomez was transferred to the El Mundo store located at 173[4]rd Street.  (Id. at ¶ 33.)  There, Gomez worked about ten hours per day for five days per week during the first month, and for four days per week thereafter.  (Id. at

---

[2] Although it is not clear which store was located at 157th Street, Gomez alleges that the store at that location was owned and operated by defendant Srour.  (Gomez Decl., ¶¶ 1, 14.)

[3] Although it is not clear which store was located at 203rd Street, Gomez alleges that the store at that location was owned and operated by defendant Srour.  (Gomez Decl., ¶¶ 1, 15.)

[4] Although it is not clear which store was located at 173rd Street, Gomez alleges that the store at that location was owned and operated by defendant Srour.  (Gomez Decl., ¶ 1.)

¶¶ 34-35.)  Gomez was paid a weekly salary of $180.  (Id. at ¶ 35.)  Gomez's employment was terminated in 2009.  (Id. at ¶ 38.)

Plaintiff commenced this action on November 15, 2010, on behalf of himself as well as all other similarly situated employees of the Stores.  (Docket entry 1.)  Maria Gomez opted-in as a plaintiff to the instant action on March 15, 2011.[5]  (Docket entry 11.)  Plaintiff initially sought conditional certification as a collective action on March 16, 2011.  (Docket entry 12.)  However, plaintiff voluntarily withdrew his motion without prejudice on May 4, 2011.  (Docket entry 19.) The instant motion renews plaintiff's request for conditional certification as a collective action. (Docket entry 20.)  Defendants oppose plaintiff's motion and plaintiff has replied.  (Docket entry 24, Defs.' Mem. of Law in Opp. to Pl.'s Mot. for Prelim. Certification ("Defs.' Opp."); docket entry 25, Rely Mem. of Law in Supp. of Pl.'s Mot. for Conditional Certification ("Pl.'s Reply").)

## DISCUSSION

### A.    Conditional Certification

Plaintiff seeks conditional certification as a collective action pursuant to 29 U.S.C. § 216(b).  The FLSA provides in pertinent part that:

> An action . . . may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).  "Although the FLSA does not contain a class certification requirement, such orders are often referred to in terms of 'certifying a class.'"  Bifulco v. Mortgage Zone, Inc., 262 F.R.D. 209, 212 (E.D.N.Y. 2009) (citations omitted).  The "certification" of a FLSA collective action "is only the district court's exercise of the discretionary power, upheld in [Hoffmann-La

---

[5] As Gomez opted-in after the commencement of this action, her name does not appear in the caption.

Roche Inc. v. Sperling, 493 U.S. 165 (1989)], to facilitate the sending of notice to potential class members.   Myers v. The Hertz Corp., 624 F.3d 537, 555 n.10 (2d Cir. 2010).   As such, "'certification' is neither necessary nor sufficient for the existence of a representative action under FLSA, but may be a useful 'case management' tool for district courts to employ in 'appropriate cases.'"  Id. (quoting Hoffmann-La Roche Inc., 493 U.S. at 169).  "[U]nlike class certification under Fed. R. Civ. P. 23, no showing of numerosity, typicality, commonality and representativeness need be made for certification of a representative action."  Cuzco v. Orion Builders, Inc., 477 F. Supp. 2d 628, 632 (S.D.N.Y. 2007) (citation and internal quotation marks omitted).   Rather, for conditional class certification under the FLSA, "[t]he similarly situated standard is far more lenient, and indeed, materially different, than the standard for granting class certification under Fed. R. Civ. P. 23."  Cunningham v. Elec. Data Sys. Corp., No. 06 Civ. 3530 (RJH), 08 Civ. 10409 (RJH), 2010 U.S. Dist. LEXIS 132127, at *14 (S.D.N.Y. Dec. 13, 2010) (citation and internal quotation marks omitted).

Courts within this Circuit apply a two-step process to determine whether an action should be certified as a FLSA collective action.  See Lynch v. United Servs. Auto. Ass'n, 491 F. Supp. 2d 357, 367-68 (S.D.N.Y. 2007); see also Myers, 624 F.3d at 554-555 ("[T]he district courts of this Circuit appear to  have coalesced around a two-step method, a method which, while again not required by the terms of FLSA or the Supreme Court's cases, we think is sensible.").  "The first step is the notice stage in which the court determines, based on plaintiffs' pleadings and affidavits, whether the plaintiffs and potential opt-in plaintiffs are sufficiently 'similarly situated' to issue notice and allow the case to proceed as a collective action through discovery."  Lynch, 491 F. Supp. 2d at 368.  "During the second stage, the court undertakes a more stringent factual determination as to whether members of the class are, in fact, similarly situated."  Id.  "The

action may be 'de-certified' if the record reveals that they are not, and the opt-in plaintiffs' claims may be dismissed without prejudice." Myers, 624 F.3d at 555.

The instant motion concerns only the first step of the process.  At this stage, plaintiff's burden is "minimal." Lynch, 491 F. Supp. 2d at 368.  "[P]laintiffs need only make 'a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law.'" Doucoure v. Matlyn Food, Inc., 554 F. Supp. 2d 369, 372 (E.D.N.Y. 2008) (quoting Hoffman v. Sbarro, 982 F. Supp. 249, 261 (S.D.N.Y. 1997)).  "The modest factual showing cannot be satisfied simply by unsupported assertions." Myers, 624 F.3d at 555.  "[T]he court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." Lynch, 491 F. Supp. 2d at 368.  "[A]ny factual variances that may exist between the plaintiff and the putative class do not defeat conditional class certification." Id. at 369 (citation omitted).

Here, plaintiff claims that the Stores maintained a common policy or plan to not pay their employees the minimum wage or properly compensate them for their overtime hours.  (Docket entry 20-2, Mem. of Law in Supp. of Pl.'s Mot. for Conditional Certification ("Pl.'s Mem."), p. 13.[6])  In support of the instant motion, plaintiff submits his own sworn declaration as well as the sworn declaration of opt-in plaintiff Maria Gomez.  Plaintiff alleges he consistently worked 60 hours per week from 2006 until a few weeks before his termination in 2010.  (Rosario Decl., ¶¶ 4, 11.)  During that time, plaintiff was paid a weekly salary of between $300 and $400, which he claims did not amount to the required minimum hourly wage and did not properly compensate him for his overtime hours.  (Id. at ¶¶ 5, 9, 12.)  Plaintiff worked at two of the Stores during this period, Valentine Avenue Discount Store Co., Inc. and Grand Concourse Discount, Inc.  (Id. at ¶¶ 2, 10, 13.)  Plaintiff states that he has spoken to Miguel Defana, who worked at El Mundo of

---

[6] The Court references the ECF page numbers listed on the top of each page.

Southern Boulevard, Inc., and Defana told plaintiff that he also was not paid the minimum wage or properly compensated for his overtime hours.  (Id. at ¶ 16.)

The record further reflects that Gomez worked at six of the Stores from 1992 to 2009. (Gomez Decl., ¶¶ 1, 10, 13, 15, 23, 33.)  From 1992 until 1997, Gomez alleges she worked 66.5 hours per week at El Mundo of 133rd Street, Inc. and was paid a weekly salary of $180, which later increased to $240.  (Id. at ¶¶ 4-5, 7-9.)  Gomez then worked 57 hours per week at the 157th Street location and at 146 St. Discount Center Co., Inc. from 1997 until 1998, and was paid a weekly salary of $260.  (Id. at ¶¶ 10-14.)  From 2000 until 2007, Gomez worked at the El Mundo store located on 203rd Street.  (Id. at ¶¶ 15, 23.)   In 2007, she was transferred to Valentine Avenue Discount Store Co., Inc. and worked there until the end of 2008.  (Id. at ¶¶ 23, 33.) While employed at the 203rd Street location and Valentine Avenue Discount Store Co., Inc., Gomez worked 9.5 hours per day and was paid an hourly wage between $5.75 and $6.25.  (Id. at ¶¶ 20, 21, 24, 25.)  Although Gomez does not state how many days she worked per week from 2000 through 2008, she does state that she was not compensated with "overtime pay," which presumes that she worked over forty hours per week.  (Id. at ¶¶ 21, 24, 26.)  In late 2008, Gomez was transferred to the El Mundo store located at 173rd Street and she worked there until her termination in 2009.  (Id. at ¶¶ 33, 38.)  While at the 173rd Street location, she was paid a weekly salary of $180 and worked 50 hours per week during the first month and 40 hours per week thereafter.  (Id. at ¶¶ 34-35.)  Gomez further states that she has spoken to Mirella, Avania, and Dominicana, three former co-workers from Valentine Avenue Discount Store Co., Inc. and the El Mundo store located at 203rd Street, and all three told her that they were not paid the minimum wage and overtime.  (Id. at ¶ 40.)

Defendants argue that plaintiff "relies on nothing more than unsubstantiated and conclusory hearsay in an effort to carry his burden in the case at bar." (Defs.' Opp., p. 14.) However, plaintiff submits his own sworn declaration as well as the sworn declaration of opt-in plaintiff Gomez. Both declarations detail the hours that plaintiff and Gomez worked at various stores and the compensation they received throughout their employment. Defendants are correct that these declarations contain some hearsay statements made by other employees to either plaintiff or Gomez that they were not paid minimum wage or overtime. (Rosario Decl., ¶ 16; Gomez Decl., ¶ 40.) Nonetheless, courts regularly grant conditional certification of collective actions based on employee affidavits setting forth an employer's failure to pay minimum wage or overtime and identifying similarly situated employees by name. See Cano v. Four M Food Corp., No. 08-CV-3005 (JFB)(AKT), 2009 U.S. Dist. LEXIS 7780, at *15 (E.D.N.Y. Feb. 3, 2009) (granting conditional certification based on "statements setting forth defendants' common denial of overtime pay, the named plaintiffs' personal knowledge of and the names of other co-workers who were allegedly subject to the same denial of overtime pay, and the opt-in plaintiffs' affidavits attesting to the same"); Wraga v. Marble Lite, Inc., No. 05 Civ. 5038 (JG)(RER), 2006 U.S. Dist. LEXIS 60457, at *5 (E.D.N.Y. Aug. 22, 2006) (granting conditional certification based on complaint and single affidavit alleging failure to pay overtime where plaintiff stated that he was aware, based on conversations, of other similarly situated employees).

Defendants also argue that plaintiff has failed to submit any evidence demonstrating a common policy at all of the Stores. Defendants contend that plaintiff "has merely set forth his purported pay practices at Valentine and Grand Concourse," and Gomez's "submission adds nothing to Plaintiff's attempt to meet his initial burden as it discusses periods outside the statutory period and incorporates conclusory allegations." (Defs.' Opp., p. 12.) The Court

disagrees that Gomez's declaration "adds nothing."  Although Gomez's employment at all but two of the Stores falls outside of the statute of limitations under the FLSA,[7] "this Court need not disregard the affidavits of employees who are time-barred under the three-year statute of limitations applicable to willful FLSA violations."  Lujan v. Cabana Mgmt., Inc., No. 10-CV-755 (ILG)(RLM), 2011 U.S. Dist. LEXIS 9542, at *20 (E.D.N.Y. Feb. 1, 2011).  Affidavits of workers whose employment falls outside the statutory period "are probative of employer's wage and hour practices and they may corroborate the claims of more recent violations."  Id.  Moreover, although Gomez's declaration does include some conclusory allegations, Gomez supports these conclusions with specific facts.  As presented above, Gomez specifies the number of hours she worked and the amount she was paid at six of the Stores over a period of eighteen years.

The instant record sets forth a modest factual showing that employees at eight of the Stores were not paid the minimum wage or properly compensated for their overtime hours.  The record reflects at least two methods of implementing such a policy.[8]  However, the central issue presented by the instant motion is whether plaintiff has demonstrated that a common policy or plan extends to *all* twenty-seven of the Stores.  Courts in this Circuit regularly find named plaintiffs to be similarly situated to employees at locations where they did not work, provided that the plaintiffs have demonstrated that they all were subject to the same allegedly unlawful policy or plan.  See Harhash v. Infinity West Shoes, Inc., No. 10 Civ. 8285 (DAB), 2011 U.S. Dist. LEXIS 96880, at *9-10 (S.D.N.Y. Aug. 25, 2011) ("The fact that the employees held different positions at different locations does not prevent conditional certification."); Karic v.

---

[7] Gomez worked only at the El Mundo store located on 173rd Street and Valentine Avenue Discount Store during the three years before she opted-in to this action on March 15, 2011.  (Gomez Decl., ¶¶ 23, 33.)

[8] Opt-in plaintiff Gomez was compensated at an hourly wage during her employment at two of the Stores, whereas plaintiff was always paid a weekly salary regardless of the number of hours he worked.  (Gomez Decl., ¶¶ 21, 24, 25; Rosario Decl., ¶¶ 5, 9, 12.)

Major Auto. Co., Inc., No. 09 CV 5708 (ENV), 2011 U.S. Dist. LEXIS 82454, at *18-19 (E.D.N.Y. July 20, 2011) (finding that plaintiffs' allegations of a common pay practice among the locations where they worked, "coupled with plaintiffs' claim that there is common ownership and control of all of these entities, including the three dealerships for which no plaintiff has yet appeared, is sufficient" to conditionally certify a class consisting of all of the entities); Capsolas v. Pasta Res., Inc., No. 10 Civ. 5595 (RJH), 2011 U.S. Dist. LEXIS 49926, at *9-10 (S.D.N.Y. May 9, 2011) (finding that employees at all eight restaurants were similarly situated to plaintiffs who only worked at five of the restaurants where the "facts support[ed] a reasonable inference that there was a uniform policy across the eight restaurants, all of which share common ownership, are supervised by the same individuals, and are administered by the same company"); Garcia v. Pancho Villa's of Huntington Vill., Inc., 678 F. Supp. 2d 89, 93-94 (E.D.N.Y. 2010) (finding that plaintiffs, who were all employed at one restaurant, were similarly situated to employees at two other restaurants where all three locations were owned by the same individuals, employees were shared between the three locations, and plaintiffs knew a co-worker in one of the other locations who was not properly compensated for overtime hours); Fasanelli v. Heartland Brewery, Inc., 516 F. Supp. 2d 317, 322 (S.D.N.Y. 2007) ("Conditional class certification is appropriate here where all putative class members are employees of the same restaurant enterprise and allege the same types of FLSA violations."); but see Lujan, 2011 U.S. Dist. LEXIS 9542, at *39 (conditionally certifying employees at three New York restaurants based on declarations from workers representing each location, but declining to certify employees at the three Florida restaurants because the Court lacked "firsthand evidence of violations at the Florida restaurants during the limitations period"); Laroque v. Domino's Pizza, LLC, 557 F. Supp. 2d 346, 356 (S.D.N.Y. 2008) (conditionally certifying employees at the store

where plaintiffs worked, but declining to certify employees at five other stores where the evidence relating to those five stores amounted to three hearsay statements and a putative class member's "generalized allegations of wrongdoing" regarding one of the stores).

Here, defendants admit that all of the Stores are owned by defendant Srour, and plaintiff and Gomez state that defendant Srour owned *and* operated the seven locations where they worked. Defendant Srour apparently played an active role in hiring and firing individual employees at various locations. Moreover, the declarations of plaintiff and Gomez reflect that employees were regularly transferred from one location to another and the policy of failing to properly compensate for overtime hours or pay the minimum wage continued despite the transfers. Finally, plaintiff alleges that defendant Srour controls the payroll and paychecks for employees at all of the Stores through a central location in Brooklyn. (Rosario Decl., ¶ 18.) Considering these factual allegations together with the wage and hour practices experienced by plaintiff and Gomez in seven different locations, the Court finds that plaintiff has set forth the requisite "modest factual showing" demonstrating a common policy or plan of denying minimum wages and overtime compensation extending to all of the Stores. However, if discovery later shows that only employees who worked at *particular* locations are similarly situated to plaintiff, the Court may, at that time, decertify the collective action. See Lynch, 491 F. Supp. 2d at 369 (citation omitted).

Finally, defendants argue that plaintiff is not similarly situated to employees with positions that plaintiff never held. (Defs.' Opp., p. 18.) The record reflects that plaintiff's job duties at the two locations where he worked included receiving merchandise, helping customers, selling merchandise, pricing merchandise, cleaning, and making repairs in the store. (Rosario Decl., ¶¶ 3, 6, 10, 13.) Defendants contend that plaintiff is only similarly situated to employees

who performed these same duties.  (Defs.' Opp., p. 18.)  However, "[i]t is not necessary for the purposes of conditional certification that the prospective class members all performed the same duties, or worked during the same time periods, or worked at the same locations as the named plaintiffs."  Cano, 2009 U.S. Dist. LEXIS 7780, at *20-22 (collecting cases).

> Keeping in mind the preliminary posture of this litigation as well as the broad, remedial purposes of the FLSA, the fact that the putative class involves a variety of diverse positions . . . and requires an individualized inquiry into each putative class member does not undermine the conditional certification of the class since under section 216(b) parties may be similarly situated, despite not occupying the same positions or performing the same job functions and in the same locations, *provided they are subject to a common unlawful policy or practice.*

Summa v. Hofstra Univ., 715 F. Supp. 2d 378, 390 (E.D.N.Y. 2010) (internal quotation marks and citation omitted) (emphasis added).  The instant record reflects that opt-in plaintiff Gomez performed the same job duties as plaintiff, as well as other duties such as arranging displays and stocking merchandise, and she claims, like plaintiff, that she was not paid the minimum wage or properly compensated for her overtime hours.[9]  (Gomez Decl., ¶¶ 3, 10, 16, 24, 33.)  Therefore, plaintiff has sufficiently established a common plan or policy of not paying the minimum wage or properly compensating for overtime hours extending to employees who performed a wider range of job duties than his own.  Nevertheless, the instant record does not support the certification of a class as broad as plaintiff has proposed.  Plaintiff has not demonstrated that all non-managerial employees are subject to the same common policy or plan.  In fact, the parties do not even state what other non-managerial positions or job duties exist within the Stores.  Plaintiff and opt-in plaintiff Gomez's job duties were similar in nature and their jobs can be broadly categorized as merchandise and maintenance workers at the Stores.[10]

---

[9] The record does not reflect the job duties performed by Defana, Mirella, Avania, and Dominicana.
[10] Neither plaintiff nor defendants propose language that categorizes the work performed by plaintiff and Gomez.

Accordingly, plaintiff has met the minimal evidentiary burden necessary at this stage for the Court to determine that he is similarly situated to all non-managerial employees who worked as merchandise and maintenance workers at the Stores.

**B.      Notice of Pendency and Consent Form**

The Court now turns to the content and means of the notice that will be provided to potential opt-in plaintiffs in this collective action.  "Determining what constitutes sufficient notice to putative plaintiffs in a Section 216(b) collective action is a matter left to the discretion of the district courts."  Laroque, 557 F. Supp. 2d at 356 (citation omitted).  Defendants object to various aspects of plaintiff's proposed notice of pendency and consent form, but have not provided their own proposed notice.  The Court hereby grants plaintiff's motion to circulate and post the proposed notice of pendency, subject to the modifications set forth below.[11]

**1.      Scope of Proposed Class**

Plaintiff proposes that notice of pendency of this collective action should be sent to all non-managerial employees who worked at the Stores.  (Docket entry 20-8, Valli Aff. at Ex. 5.)  Defendants argue that plaintiff's definition of the class is overbroad.  (Defs.' Opp., p. 18.)  As the Court already determined that plaintiff is similarly situated to all non-managerial employees who worked as merchandise and maintenance workers at the Stores, the notice of pendency shall be specifically directed to those employees.   To insure that potential opt-in plaintiffs will understand the notice of pendency, the notice shall describe potential opt-in plaintiffs as follows: "non-managerial employees who performed work related to the receipt, stocking, or sale of merchandise, or general maintenance/cleaning of the store."

---

[11] The notice of pendency shall reflect that I have authorized the contents of the notice, as Judge Korman referred the matter to me.

Plaintiff proposes that the notice of pendency should be sent to employees that worked for defendants within the three years preceding the commencement of this action.  (Valli Aff. at Ex. 5.)  Defendants argue that the notice period should be measured as two years preceding the date of this Order.  (Defs.' Opp., pp. 16-17.)  The statute of limitations under the FLSA is two years, "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued."  29 U.S.C. § 255(a).  "Because the statute of limitations runs for each individual plaintiff until he consents to join the action, courts generally permit plaintiffs to send notice to those employed during the three year period prior to the date of the Order or to the mailing of the notice."  Whitehorn v. Wolfgang's Steakhouse, Inc., 767 F. Supp. 2d 445, 451 (S.D.N.Y. 2011) (citations omitted); see Anglada v. Linens 'N Things, Inc., No. 06 Civ. 12901 (CM)(LMS), 2007 U.S. Dist. LEXIS 39105, at *26 (S.D.N.Y. April 26, 2007) ("[U]sage of the three year date from the issuance of the notice is more in keeping with § 256(b).").  Although defendants contend that plaintiff has not alleged facts supporting the conclusion that defendants' alleged conduct was willful, "specific challenges to the timeliness of the claims of certain 'opt-in' plaintiffs or the named Plaintiff can be addressed after the completion of discovery during the second phase of the collective action certification process."  Fasanelli, 516 F. Supp. 2d 317 at 323 (sending notice to individuals employed by defendants over the past three years).  Accordingly, the notice of pendency shall be directed to potential opt-in plaintiffs that worked for the Stores in the three years preceding the date of this Order.

### 2.  Language Concerning Minimum Wage Violations

Although not raised by the parties, the Court notes that plaintiff's proposed notice of pendency and consent form does not reference minimum wage violations.   Plaintiff sought, and the Court has granted, conditional certification as a collective action based on defendants' failure

to properly compensate for overtime hours *and* pay minimum wages.  Accordingly, the notice of pendency and consent form shall refer to defendants' alleged failure to pay minimum wages as well as defendants' alleged failure to properly compensate for overtime hours.[12]

### 3.  Rights and Obligations of Opt-in Plaintiffs

Defendants raise various objections to the information provided in the proposed notice of pendency regarding the rights and obligations of opt-in plaintiffs.  Defendants first argue that the notice of pendency should include a statement that opt-in plaintiffs "will be subject to discovery obligations, which may include providing deposition or trial testimony under oath, responding to document requests, and/or responding to requests for information."   (Defs.' Opp., p. 19.) Plaintiff does not respond to defendants' proposal.  Nonetheless, the Court finds that the notice of pendency should include "a neutral and non-technical reference to discovery obligations, to insure that opt-in plaintiffs understand that their participation would entail greater obligations than participation in some Rule 23 class actions."  Lujan, 2011 U.S. Dist. LEXIS 9542, at *40. Accordingly, the notice shall include the following language:  "If you join this lawsuit, you may be asked to give testimony and information about your work for defendants to help the Court decide whether you are owed any money."

Defendants also argue that opt-in plaintiffs "should be warned that they could be liable for Defendants' costs in defending the case if the Defendants ultimately prevail in this matter." (Defs.' Opp., p. 19.)  However, courts in this district have found language about potential costs to be inappropriate "[g]iven the remote possibility that such costs for absent class members

---

[12] Specifically, the section of the notice entitled "Introduction to the Case" shall refer to minimum wage claims when describing the lawsuit and shall alert potential opt-in plaintiffs that they may be eligible to join the lawsuit if they worked for defendants during the notice period and were not paid the minimum wage.  Moreover, to reflect the minimum wage claims, the title of the notice of pendency shall be changed from "Notice of FLSA Overtime Lawsuit" to "Notice of FLSA Lawsuit."  Finally, the consent form shall include a reference to minimum wage claims by opt-in plaintiffs.

would be other than de minimis," and the risk of "an in terrorem effect that is disproportionate to the actual likelihood that costs . . . will occur in any significant degree." Guzman v. VLM, Inc., No. 07-CV-1126 (JG), 2007 U.S. Dist. LEXIS 75817, at *23-24 (E.D.N.Y. Oct. 11, 2007); see Lujan, 2011 U.S. Dist. LEXIS 9542, at *39.  Accordingly, the notice of pendency shall not include any reference to potential costs for opt-in plaintiffs.

Defendants argue that the notice of pendency should state that opt-in plaintiffs may retain their own counsel and are not required to designate plaintiff's law firm as their counsel.  (Defs.' Opp., p. 19.)  Plaintiff responds by pointing to the following language in the proposed notice: "You can join this lawsuit by representing yourself or by [retaining] counsel of your own choosing."  (Pl.'s Reply, p. 9; Valli Aff. at Ex. 5.)  The Court finds that plaintiff's proposed language, with the word "retaining" added as above, is sufficient to inform opt-in plaintiffs of their right to retain separate counsel.  See Garcia, 678 F. Supp. 2d at 95 (modifying the proposed notice "so that potential plaintiffs are informed that they may retain their own counsel, should they choose to join the within litigation, as an alternative to plaintiffs' counsel's firm").

Defendants also argue that opt-in plaintiffs should have to sign the consent forms under penalty of perjury.  (Defs.' Opp., p. 19.)  Defendants do not cite any authority in support of their argument.  In fact, similar requests for opt-in plaintiffs to sign consent forms under the penalty of perjury have been rejected by district courts in this Circuit.  See Garcia, 678 F. Supp. 2d at 95-96; Delaney v. Geisha NYC, LLC, 261 F.R.D. 55, 59 (S.D.N.Y. 2009).  Accordingly, opt-in plaintiffs shall not be required to sign the consent forms under the penalty of perjury.

Finally, defendants contend that the notice of pendency should be "more balanced, summarizing not only Plaintiffs' claims against Defendants, but also Defendants' defenses." (Defs.' Opp., pp. 18-19.)  Plaintiff does not respond to defendants' argument.  However, the

Court notes that the section entitled "No Retaliation Permitted" in the proposed notice of pendency includes the following language: "The defendant has denied the allegations of the lawsuit and has raised various defenses.  The Court has approved the sending of this Notice, but the Court expresses no opinion on the merits of this lawsuit.  A final decision on the merits of this lawsuit has not been made by the Court."  (Valli Aff. at Ex. 5.)  Defendants do not propose alternative language.  The Court finds the above-referenced language regarding defendants' defenses to be sufficient given the brevity of the notice.  See Delaney, 261 F.R.D. at 59 (finding the statement that "Japonais denies that they violated the Fair Labor Standards Act" to be sufficient information about defendants' defenses).  However, such language is currently misplaced within the notice and shall be included in the section entitled "Introduction to the Case."

### 4.  Translation of Notice

Plaintiff proposes translating and publishing the notice of pendency and consent form in English and Spanish.  (Valli Aff., ¶ 3.)  Defendants do not object to this request.  Thus, the notice of pendency and consent form, as modified herein, shall be translated and published in English and Spanish.

### 5.  Submission of Consent Forms

Plaintiff proposes that opt-in plaintiffs should send the signed consent forms to plaintiff's counsel.  (Valli Aff. at Ex. 5.)  Defendants argue that it is inappropriate to require opt-in plaintiffs to send their consent forms to plaintiff's counsel.  (Defs.' Opp., p. 19.)  Indeed, "[r]ecent cases in this district have suggested that such a procedure implicitly discourages opt-in plaintiffs from selecting other counsel."  Lujan, 2011 U.S. Dist. LEXIS 9542, at *44 (modifying plaintiffs' proposed notice to direct opt-in plaintiffs to send their consent forms to the court)

(citations omitted).  Accordingly, the notice of pendency shall direct opt-in plaintiffs to file their consent forms with the Clerk of Court.[13]  The Clerk of Court shall electronically file the signed consent forms which shall notify counsel for both sides that a plaintiff has opted-in.

### 6.  Posting of the Notice of Pendency and Consent Forms

Plaintiff requests that the Court order defendants to post the notice of pendency and consent forms in the Stores.  (Valli Aff., ¶ 3.)  Defendants state that "posting of notices should not [be] permitted," but provide no argument nor cite any cases to support their position.  (Defs.' Opp., p. 21.)  "Courts routinely approve requests to post notice on employee bulletin boards and in other common areas, even where potential members will also be notified by mail." Whitehorn, 767 F. Supp. 2d at 449 (citations omitted).  Accordingly, for the duration of the opt-in period, defendants shall post the notice of pendency and consent forms, as modified herein, on the employee bulletin boards and in other common areas conspicuous to all employees in each of the Stores.

### C.    Production of Names and Personal Information of Potential Opt-In Plaintiffs

Plaintiff moves for the production of the names, last known addresses, alternate addresses, telephone numbers, email addresses, dates of birth, social security numbers, and dates of employment for all potential opt-in plaintiffs who worked at the Stores in the three years preceding the commencement of this action.   (Valli Aff., ¶ 3.)   Courts within this Circuit typically grant requests for the production of the names and last known addresses of potential opt-in plaintiffs when granting a motion for conditional certification as a collective action.  See Cruz v. Lyn-Rog Inc., No. CV 10-3735 (LDW)(AKT), 2010 U.S. Dist. LEXIS 128332, at *13 (E.D.N.Y. Dec. 6, 2010) (citing cases).  Indeed, defendants consent to the production of the names and last known addresses of potential opt-in plaintiffs, but object to the production of all

---

[13] The consent form shall be entitled "Consent to Join Lawsuit."

other requested information on the ground that its disclosure would violate the employees' privacy rights. (Defs.' Opp., p. 20.) Plaintiff replies that a confidentiality agreement between the parties would address any privacy concerns and that the employees' dates of birth and social security numbers are necessary to search for the current addresses of opt-in plaintiffs where the notices are returned as undeliverable. (Pl.'s Reply, p. 10.)

The Court finds the disclosure of potential opt-in plaintiffs' names, last known addresses, telephone numbers, and dates of employment to be appropriate.[14] See Capsolas, 2011 U.S. Dist. LEXIS 49926, at *14 (directing defendants to produce potential opt-in plaintiffs' names, addresses and telephone numbers); In re Penthouse Executive Club Comp. Litig., No. 10 Civ. 1145 (NRB), 2010 U.S. Dist. LEXIS 114743, at *20 (S.D.N.Y. Oct. 26, 2010) (finding the disclosure of names, addresses, telephone numbers, and dates of employment to be "essential to identifying potential opt-in plaintiffs"); but see Colozzi v. St. Joseph's Hosp. Health Ctr., 595 F. Supp. 2d 200, 201 (N.D.N.Y. 2009) ("[P]laintiffs have no need for the additional, inherently private information sought, including e-mail addresses, telephone numbers, social security numbers, and dates of birth."). In light of the privacy concerns regarding employees' dates of birth and social security numbers, the production of such information is unnecessary at this juncture. If plaintiff is unable to effectuate notice on some potential opt-in plaintiffs with the information that is produced, plaintiff may renew his application for additional information regarding those specific employees. See Whitehorn, 767 F. Supp. 2d at 448 ("While courts often decline to allow discovery of social security numbers due to privacy concerns, it is generally accepted that such discovery is permitted where Plaintiff can demonstrate that names and contact information are insufficient to effectuate notice."). Accordingly, defendants shall provide plaintiff with the names, last known addresses, telephone numbers, and dates of employment of

---

[14] Production of potential opt-in plaintiffs' email addresses and alternate addresses are unnecessary at this time.

all potential opt-in plaintiffs who have worked for the Stores within the three years preceding the date of this Order.[15]

## CONCLUSION

For the reasons set forth above, plaintiff's motion is granted.   The Court authorizes plaintiff to send notice of the pendency of this collective action to potential opt-in plaintiffs.  The Court approves plaintiff's proposed notice of pendency as modified herein.[16]   Defendants shall produce the names, last known addresses, telephone numbers, and dates of employment of potential opt-in plaintiffs to plaintiff's counsel by November 18, 2011.  Defendants shall post and plaintiff shall mail the approved notice of pendency to all potential opt-in plaintiffs by December 2, 2011.  Opt-in plaintiffs shall file their consent forms with the Court by January 27, 2012.

SO ORDERED.

_____/S/_____
LOIS BLOOM
United States Magistrate Judge

Dated:  November 2, 2011
             Brooklyn, New York

---

[15] The Court has already determined that three years preceding the date of this Order, not the commencement of this action, is the appropriate notice period.
[16] The modified notice of pendency and consent form is attached as an appendix below.

**APPENDIX: NOTICE OF PENDENCY AND CONSENT TO JOIN LAWSUIT**

**NOTICE OF FLSA LAWSUIT**

**To:  All non-managerial employees who performed work related to the receipt, stocking, or sale of merchandise, or general maintenance/cleaning of the store at any of the companies listed below at any time from November 2, 2008 to the present**

---

**THIS NOTICE AND ITS CONTENTS HAVE BEEN AUTHORIZED BY THE HONORABLE LOIS BLOOM UNITED STATES MAGISTRATE JUDGE – EASTERN DISTRICT OF NEW YORK**

**The purpose of this Notice is to advise you of a lawsuit that has been filed against the companies and individual below under the Fair Labor Standards Act and to advise you of the legal rights you have in connection with that lawsuit.**

---

**1.     Introduction to the Case**

This notice is to inform you of a lawsuit pending in the United States District Court for the Eastern District of New York in Brooklyn, New York against the following companies and individual:

| | |
|---|---|
| Valentine Avenue Discount Store, Co., Inc. | 158 St. Discount Center Co., Inc. |
| El Mundo of 133rd Street, Inc. | American Department Store, Inc. |
| El Mundo of Amsterdam, Inc. | Bergament Outlet Center, Inc. |
| El Mundo of Jamaica, Inc. | ElMundo Holding Co., Inc. |
| El Mundo of Knickerbocker, Inc. | Grand Concourse Discount, Inc. |
| El Mundo of Southern Boulevard, Inc. | Grant Department Store Co., Inc. |
| El Mundo of Steinway, Inc. | Willis Avenue Discount Center Co., Inc. |
| El Mundo of Willis Avenue, Inc. | Dominicano Department Store, Inc. |
| American Place at 86th Street, Inc. | El Mundo Department Store, Inc. |
| American Place at Fourth Avenue, Inc. | Five Star Department Store, Inc. |
| American Place at Nostrand, Inc. | Hamilton Variety Co., Inc. |
| American Place of Broadway, Inc. | American Home Ctr. |
| 13th Avenue Bergament Home Center, Inc. | Kingstone Distributors Co., Inc. |
| 146 St. Discount Center Co., Inc. | Raymond Srour |

This lawsuit claims that the above-listed defendants violated the Fair Labor Standards Act and New York Labor Law by failing to pay all eligible employees the minimum wage or overtime at one-and-a-half times their regular pay rate for those hours worked in excess of 40 hours per week.  The lawsuit claims that defendants must pay unpaid overtime compensation and minimum wages and liquidated damages, as well as costs and attorney's fees to all such employees.

Defendants deny that they have violated the FLSA and have raised various defenses.  The Court has approved the sending of this Notice, but the Court expresses no opinion on the merits of this lawsuit.  A final decision on the merits of this lawsuit has not been made by the Court.

You may be eligible to join this lawsuit if you:

(1) worked for any of the above-listed stores at any time from November 2, 2008 to the present;

(2) were a non-managerial employee who performed work related to the receipt, stocking, or sale of merchandise, or general maintenance/cleaning of the store; and

(3) were either not paid the minimum wage or worked more than 40 hours per week and were not paid overtime at one-and-a-half times your regular hourly rate of pay for any work performed in excess of 40 hours per week.

**2.     To Join the Lawsuit and Be Represented by Plaintiff's Counsel**

If you fit the description above, you may join this lawsuit by completing the attached "Consent to Join Lawsuit" form and mailing it to the Court by January 27, 2012 at the following address:

Clerk of Court
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201
Re: 10-CV-5255 (ERK)(LB)

If you fail to return the "Consent to Join Lawsuit" form to the Court by January 27, 2012, you may not be able to participate in this lawsuit. If you choose to join this lawsuit, you will be bound by the judgment, whether it is favorable or unfavorable.  If you join this lawsuit, you may be asked to give testimony and information about your work for defendants to help the Court decide whether you are owed any money.

Plaintiff's counsel, Borelli & Associates and Valli Kane & Vagnini LLP, are being paid on a contingency fee basis, which means that if there is no recovery, there will be no attorney's fee. If there is a recovery, plaintiff's counsel will receive either a fee from the defendants and/or a part of any settlement obtained or money judgment entered in favor of the plaintiff and others who opt-in.  If you sign and return the "Consent to Join Lawsuit" form attached to this Notice, you are agreeing to permit the attorney to make decisions on your behalf concerning the litigation, the method and manner of conducting this litigation, and to enter into an agreement with plaintiff's counsel concerning attorney's fees and costs.  However, the Court retains jurisdiction to determine the reasonableness of any fee agreement entered into by plaintiffs with counsel and to determine the adequacy of the plaintiff's counsel.

You may call Valli Kane & Vagnini LLP for further information about this lawsuit.  The toll free phone number is (866) 441-2873.

**3.     To Join the Lawsuit and Not Be Represented by Plaintiff's Counsel**

You may join this lawsuit by representing yourself or by retaining an attorney of your own choosing.  To do so, you or your attorney must file the appropriate documents with the Clerk of

Court listing the name and docket number of this case: <u>Rosario v. Valentine Avenue Discount Store Co., Inc.</u>, 10-CV-5255 (ERK)(LB).  The address of the Court is:  United States District Court for the Eastern District of New York, 225 Cadman Plaza East, Brooklyn, New York 11201.

**4.      To Not Participate in the Lawsuit**

If you do not wish to be part of this lawsuit, you need not do anything.  If you do not join the lawsuit, you will not be part of the case in any way and you will not be bound by or affected by the result, whether favorable or unfavorable.  Your decision not to join this lawsuit will not affect your right to bring a similar case on your own in the future.  However, claims under the Fair Labor Standards Act must be brought within two years, unless the employer's violation of the law was "willful," in which case the claims must be brought within three years of the alleged violation.

**5.      No Retaliation Permitted**

Defendants are prohibited by law from taking any retaliatory action against any person, including a current employee, who joins this lawsuit.

## CONSENT TO JOIN LAWSUIT
## Rosario v. Valentine Avenue Discount Store Co., Inc.
## 10-CV-5255 (ERK)(LB)

I represent that I worked as a non-managerial employee for one or more of the defendants in this lawsuit at some time between November 2, 2008 and the present and performed work related to the receipt, stocking, or sale of merchandise, or general maintenance/cleaning of the store.  I was not paid the minimum wage and/or I worked in excess of 40 hours per week and was not properly compensated for overtime.  I hereby consent to be a plaintiff in the lawsuit named Rosario v. Valentine Avenue Discount Store Co., Inc.  I hereby consent to the prosecution of any claims that I may have under the Fair Labor Standards Act and New York Labor Law for unpaid overtime, unpaid minimum wages, liquidated damages, attorney's fees, costs, and other relief against the defendants.  I authorize Borelli & Associates and Valli Kane & Vagnini LLP, its successors and assigns, to represent me in this case.

By signing and returning this consent form to the Court, I understand that I will be represented by Borelli & Associates and Valli Kane & Vagnini LLP without prepayment of attorney's fees.  I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will first be deducted from any settlement or judgment entered.  I understand that Borelli & Associates and Valli Kane & Vagnini LLP may petition the Court for an award of fees and costs to be paid by defendants on my behalf.  I understand that the fees retained by the attorneys will be either the amount received from the defendants or a percentage of the total settlement or judgment amount (including fees).

Dated: _____          Signature: _____

                                       Name: _____

                                       Address: _____

                                       _____

                                       Phone: _____

### MAIL THIS FORM BY JANUARY 27, 2012 TO THE COURT
### AT THE FOLLOWING ADDRESS:

Clerk of Court
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201
Re: 10-CV-5255 (ERK)(LB)