UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

JULIAN ROSARIO, *on behalf of himself and all
others similarly situated*,

               Plaintiff,                    **REPORT AND RECOMMENDATION**
                                                   **10 CV 5255 (ERK) (LB)**

        -against-

VALENTINE AVENUE DISCOUNT STORE, CO.,
INC., EL MUNDO OF 133RD STREET, INC., EL
MUNDO OF AMSTERDAM, INC., EL MUNDO
OF JAMAICA, INC., EL MUNDO OF
KNICKERBOCKER, INC., EL MUNDO OF
SOUTHERN BOULEVARD, INC., EL MUNDO
OF STEINWAY, INC., EL MUNDO OF WILLIS
AVENUE, INC., AMERICAN PLACE AT 86TH
STREET, INC., AMERICAN PLACE AT FOURTH
AVENUE, INC., AMERICAN PLACE AT
NOSTRAND, INC., AMERICAN PLACE OF
BROADWAY, INC., 13TH AVENUE
BERGAMENT HOME CENTER, INC., 146 ST.
DISCOUNT CENTER CO., INC., 158 ST.
DISCOUNT CENTER CO., INC., AMERICAN
DEPARTMENT STORE, INC., BERGAMENT
OUTLET CENTER, INC., ELMUNDO HOLDING
CO., INC., GRAND CONCOURSE DISCOUNT,
INC., GRANT DEPARTMENT STORE CO., INC.,
WILLIS AVENUE DISCOUNT CENTER CO., INC.,
DOMINICANO DEPARTMENT STORE, INC.,
EL MUNDO DEPARTMENT STORE, INC., FIVE
STAR DEPARTMENT STORE, INC., HAMILTON
VARIETY CO., INC., AMERICAN HOME CTR.,
KINGSTONE DISTRIBUTORS CO., INC., and
RAYMOND SROUR,

               Defendants.

-----------------------------------------------------------------X

**BLOOM, United States Magistrate Judge:**

       Plaintiff Julian Rosario moves pursuant to Fed. R. Civ. P. 23 to certify a class of

employees who allege they were not paid minimum wage or overtime premiums as required by

New York's labor law. (ECF No. 185.) The Honorable Edward R. Korman, United States District Judge, referred plaintiff's motion to me for a Report and Recommendation in accordance with 28 U.S.C. § 636(b). For the reasons set forth below, it is respectfully recommended that plaintiff's motion for class certification pursuant to Fed. R. Civ. P. 23 should be granted.

## I. BACKGROUND

### A. Procedural History

Plaintiff commenced this action on November 15, 2010, on behalf of himself and all other similarly situated employees, alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, et seq., and the New York Labor Law ("NYLL"), §§ 650, et seq. (ECF No. 1.) On November 2, 2011, the Court conditionally certified this matter as a collective action pursuant to 29 U.S.C. § 216(b), and authorized plaintiff to distribute notice of the pending collective action to potential opt-in plaintiffs. (ECF No. 27.)

During a status conference on August 2, 2012, plaintiff's counsel stated that plaintiff intended to pursue class certification pursuant to Fed. R. Civ. P. 23. The Court set a briefing schedule for plaintiff's proposed motion for class certification and ordered the parties to file the fully-briefed motion by November 13, 2012. After several extensions were requested by the parties to serve their papers, the fully briefed motion was filed. (ECF No. 189.)

Plaintiff's instant motion seeks to certify a class of:

All persons employed by Defendants to perform work in any of Defendants' locations as a non-managerial employee between November 15, 2004 to the entry of final judgment in this case (the "Class Period") who have not been paid all wages owed to them, including minimum wage payments and overtime premiums, in violation of the New York Labor Law (the "Class").

(Memorandum of Law in Support of Plaintiff's Motion for Class Certification ("Pl.'s Mem. of Law") at 1, ECF No. 185-1 at 6.) Defendants oppose plaintiff's motion.

(Memorandum of Law in Opposition to Class Certification ("Defs.' Opp'n"), ECF No. 177.)

**B. New York Labor Law**

The NYLL requires employers to pay full-time employees a minimum hourly rate and an overtime premium for hours worked in excess of forty hours in a workweek. The New York regulation setting the applicable minimum wage provides that "[t]he basic minimum hourly wage rate shall be:"

> (a) $5.15 per hour on and after March 31, 2000;
> (b) $6.00 per hour on and after January 1, 2005;
> (c) $6.75 per hour on and after January 1, 2006;
> (d) $7.15 per hour on and after January 1, 2007;
> (e) $7.25 per hour on and after July 24, 2009 or, if greater, such other wage as may be established by Federal law pursuant to 29 U.S.C. section 206 or its successors.

Title 12 N.Y. Comp. R. & Regs. § 142-2.1. Likewise, the regulation setting the required overtime premium provides that "an employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate" for hours worked in excess of forty hours in a workweek. N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2; accord 29 U.S.C. § 207 (a)(1). A civil action brought alleging a violation of these requirements "must be commenced within six years." N.Y. Lab. Law § 663.

Under the NYLL, the "[f]ailure of an employer to keep adequate records or provide statements of wages to employees . . . shall not operate as a bar to filing of a complaint by an employee. In such a case the employer in violation shall bear the burden of proving that the complaining employee was paid wages, benefits and wage supplements." N.Y. Lab. Law § 196-a(a).

## C. Defendants' Alleged Conduct

Julian Rosario, the named plaintiff in this action, worked for three defendant stores between 2006 and 2010.[1] (Rosario Decl. ¶¶ 4, 7, 10, ECF No. 189-10.) Plaintiff's duties included receiving merchandise, helping customers, selling merchandise, pricing merchandise, cleaning, and making repairs in the store. (Rosario FLSA Decl. ¶¶ 3, 6, 10, 13.) Plaintiff alleges that at each location, he worked from 9:30 a.m. until 8:00 p.m., six days a week, but was only permitted to punch his time card to reflect the first forty hours he worked.[2] (Rosario Decl. ¶¶ 11, 12.) As such, plaintiff alleges that defendants' payroll records are not accurate. (Rosario Decl. ¶ 3.) Plaintiff was paid at a weekly rate, ranging from $300 a week when he began working in 2006, to $400 a week at the end of his employment, regardless of how many hours he actually worked. (Rosario FLSA Decl. ¶¶ 5, 12.) Plaintiff alleges defendants' payment practices violate New York state law because the weekly wage plaintiff received was less than the amount he would have received had he been paid the required minimum wage rate for each of the approximately sixty hours a week he worked, as well as an overtime premium for the hours he worked in excess of forty hours per workweek.

The record contains declarations from thirteen other non-managerial employees who worked for defendants during the relevant period alleging similar violations. Like plaintiff, these

---

[1] Plaintiff's declaration in support of his motion for conditional certification stated that he worked at two rather than three locations. (Rosario FLSA Decl. ¶ 1, ECF No. 189-11.) Plaintiff now claims that he worked for a third store from 2007 until 2008. (Rosario Decl. ¶¶ 7, 9.) The Court notes this discrepancy but credits both of plaintiff's declarations. Plaintiff's first declaration was submitted in support of his FLSA claims, which, because of a shorter statute of limitations, challenged defendants' conduct beginning in November 2008. Plaintiff's employment at the third store likely ended before that date, and thus plaintiff only worked at two stores during the FLSA period.

[2] Plaintiff's declaration in support of conditional certification alleges that plaintiff was instructed to clock in for only four out of the six days he worked. (Rosario FLSA Decl. ¶ 7.) Plaintiff now alleges that he was instructed by the manager at each location not to punch his time cards after the fourth day of work "and/or" after he recorded forty hours. (Rosario Decl. ¶ 12.) Again, the Court notes this inconsistency but credits plaintiff's declaration because plaintiff would have worked forty hours after four days. See (Rosario Decl. ¶ 11) (plaintiff alleges that he normally worked from 9:30 a.m. until 8:00 p.m.); (Rosario FLSA Decl. ¶ 4) (plaintiff received a one half-hour lunch break).

employees allege they were required to work in excess of forty hours per week.[3] (Gomez Decl. ¶ 3, ECF No. 189-13; Martinez Decl. ¶ 5, ECF No. 189-15; Garcia Decl. ¶ 3, ECF No. 189-17; Peña Decl. ¶ 3, ECF No. 189-19; Villegas Decl. ¶¶ 4, 5, ECF No. 189-22; Castillo Decl. ¶¶ 4, 5, ECF No. 189-24; Mena Decl. ¶ 3, ECF No. 189-27; De La Cruz Decl. ¶ 3, ECF No. 189-29; Villacis Decl. ¶ 3, ECF No. 189-31; Calderon Decl. ¶ 5, ECF No. 190; Pacheco Decl. ¶ 5, ECF No. 190-2; Guzman Decl. ¶ 4, ECF No. 190-4.) Employees were either prevented from punching their time cards after a certain number of hours were recorded (Gomez Decl. ¶ 6; Martinez Decl. ¶ 7; Garcia Decl. ¶ 10; Mena Decl. ¶ 6; Villacis Decl. ¶ 4;[4] Calderon Decl. ¶ 6; Pacheco Decl. ¶ 6, Guzman Decl. ¶ 5), or were only permitted to punch their cards for certain days during the work-week. (Peña Decl. ¶ 4; Villegas Decl. ¶ 10, Guzman Decl. ¶ 6.)

Some of the employees were paid a set daily or weekly wage, (Gomez Decl. ¶ 5; Villegas Decl. ¶ 11; Mena Decl. ¶ 5; Villacis Decl. ¶ 6; Calderon Decl. ¶ 9; Guzman Decl. ¶¶ 2, 6, 7; Ramirez Decl. ¶ 5), while others were paid an hourly rate. (Martinez Decl. ¶ 6; Garcia Decl. ¶ 5; ECF. No. 189-20;[5] Castillo Decl. ¶¶ 4; De La Cruz Decl. ¶ 3; Pacheco Decl. ¶ 5.) The employees who were paid a set wage received less than they would have received if they were paid minimum wage for each hour worked and/or the appropriate overtime premium. The hourly employees were only compensated for some of the hours that they worked, and defendants therefore violated their rights under the NYLL's minimum wage and overtime requirements.[6] Viewed as a whole, plaintiffs' declarations establish that defendants denied employees overtime

---

[3] Opt-in plaintiff Ramirez alleges she worked ten and one-half hours per day, but does not state how many days she worked per week. (Ramirez Decl. ¶ 4, ECF No. 190-6.)

[4] Opt-in plaintiff Villacis alleges his manager punched his time card for him. Villacis' payroll records reflect fewer than forty hours per week were.

[5] While the affidavit from opt-in plaintiff Peña does not address how she was paid for the hours she was permitted to record, the payroll records submitted along with her statement reflect that she was paid $7.25 per hour.

[6] One hourly employee, opt-in Pacheco, alleges that she recorded her hours on two separate time cards and was paid in cash for the hours recorded on the second card. (Pacheco Decl. ¶ 7.) The declarations from the other hourly employees do not allege a second time card. The payroll records submitted for the employees reflect they were paid only for the hours defendants permitted them to record.

and minimum wage payments and disguised their labor law violations by requiring the employees to underreport the hours they actually worked.

## II. DISCUSSION

### A. Rule 23 Legal Standard

To be certified as a class action, plaintiff's proposed class must meet the four prerequisites of Rule 23(a) and fall into one of the categories of Rule 23(b). Fed. R. Civ. P. 23; see also Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc., 546 F.3d 196, 201–02 (2d Cir. 2008). Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.[7] Fed. R. Civ. P. 23(a). Rule 23(b)(3), the subsection of Rule 23 most applicable here, requires the Court to find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.R.Civ.P. 23(b)(3). Courts have also added an additional requirement that the proposed class must be ascertainable by objective criteria. See Flores v. Anjost Corp., 284 F.R.D. 112, 123 (S.D.N.Y. 2012); Briceno v. USI Services Group, Inc., 09-CV-4252 JS AKT, 2012 WL 4511626 (E.D.N.Y. Sept. 28, 2012).

In this Circuit, "[t]he party seeking class certification bears the burden of establishing by a preponderance of the evidence that each of Rule 23's requirements has been met." Myers v. Hertz Corp., 624 F.3d 537, 547 (2d Cir. 2010). The Court must conduct a "rigorous analysis," to determine whether the prerequisites of Rule 23(a) have been satisfied, Comcast Corp. v.

---

[7] The four prerequisites of Rule 23(a) are commonly referred to as numerosity, commonality, typicality, and adequacy of representation.

Behrend, 11-864, 2013 WL 1222646 (U.S. Mar. 27, 2013) (quoting General Telephone Co. of Southwest v. Falcon, 457 U.S. 147, 161 (1982)), and the Court must resolve factual disputes relevant to class certification even if they overlap with issues that go to the merits of the case. In re Initial Public Offerings Securities Litigation, 471 F.3d 24, 41 (2d Cir. 2006).

"The Second Circuit has emphasized that Rule 23 should be given liberal rather than restrictive construction, and it seems beyond peradventure that the Second Circuit's general preference is for granting rather than denying class certification." Espinoza v. 953 Associates LLC, 280 F.R.D. 113, 124 (S.D.N.Y. 2011) (internal quotation marks omitted). "Courts have wide discretion in determining whether to certify a class, and where a collective action under the FLSA that is based on the same set of facts has been approved, there is an inclination to grant class certification of state labor law claims." Lee v. ABC Carpet & Home, 236 F.R.D. 193, 202-03 (S.D.N.Y. 2006) (citing Ansoumana v. Gristede's Operating Corp., 201 F.R.D. 81, 96 (S.D.N.Y. 2001)).

**B. APPLICATION**

*1. Ascertainability*

"[I]n order for a class to be certified, the named plaintiffs must demonstrate that there is an identifiable class." Gortat v. Capala Bros., Inc., 07-CV-3629 (ILG), 2010 WL 1423018, at *2 (E.D.N.Y. Apr. 9, 2010) (internal quotation omitted). "An identifiable class exists if its members can be ascertained by reference to objective criteria." Stinson v. City of New York, 282 F.R.D. at 373 (S.D.N.Y 2012) (quoting In re Fosamax Prods. Liab. Litig., 248 F.R.D. 389, 395 (S.D.N.Y. 2008)). The ascertainability standard is not demanding; it is meant "only to prevent the certification of a class whose membership is truly indeterminable." Gortat, 2010 WL 1423018, at *2. The requirement that a class be ascertainable "does not require that every class member be

identifiable prior to class certification. Rather, the Court need only be able to ascertain the general boundaries of the proposed class." Id. (internal quotations and citations omitted).

"[C]ertification is routinely granted where the proposed class definition relies in part on the consideration of defendants' alleged liability." Noble v. 93 Univ. Place Corp., 224 F.R.D. 330, 341-42 (S.D.N.Y. 2004) (collecting cases). "Were it otherwise, the benefits of the class action mechanism would be significantly undermined because plaintiffs seeking relief based upon a defendant's alleged unlawful *practice or policy* might be precluded from collectively bringing suit." Id. at 342 (emphasis in original). Plaintiff's proposed class of employees "who have not been paid all wages owed to them, including minimum wage payments and overtime payments, in violation of the New York Labor Law" is the type of class definition based on defendants' alleged liability which satisfies ascertainability. See Id. at 341 (certifying class of "all non-exempt employees who were not paid overtime compensation for each hour worked in excess of forty hours per week"); see also Flores, 284 F.R.D. at 123. Whether an employee has been paid the wages owed to them is an objective question that turns on the number of hours they worked and the wages they were paid. See Flores, 284 F.R.D. at 123 ("The class can clearly be ascertained by objective documentation, such as Defendants' employee payroll records and wage statements.") (citing Jankowski v. Castaldi, No. 01CV0164 (SJF)(KAM), 2006 WL 118973, at *5 (E.D.N.Y. Jan. 13, 2006)). Based on the instant record, the Court finds that plaintiff's proposed class is ascertainable.

*2. Numerosity*

The first prerequisite of Rule 23(a) requires the Court to find that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). In this Circuit, "numerosity is presumed at a level of 40 members." Consol. Rail Corp. v. Town of Hyde Park,

47 F.3d 473, 483 (2d Cir. 1995). In wage and hours cases, courts "assess the numerosity requirement based on the size of the proposed class rather than the number of opt-in plaintiffs." Guan Ming Lin v. Benihana New York Corp., 10 CIV. 1335 RA JCF, 2012 WL 7620734, at *4 (S.D.N.Y. Oct. 23, 2012) report and recommendation adopted, 10 CIV. 1335 RA JCF, 2013 WL 829098 (S.D.N.Y. Feb. 27, 2013). Therefore, courts have found numerosity with fewer than forty opt-in plaintiffs. See Niemiec v. Ann Bendick Realty, 1:04CV00897ENVKAM, 2007 WL 5157027, at *6 (E.D.N.Y. Apr. 23, 2007) (finding numerosity despite only ten opt-in plaintiffs).

To date, over 100 non-managerial employees have consented to join the FLSA collective action previously certified by this Court,[8] alleging that they were not paid wages defendants owed to them.[9] As the number of opt-in plaintiffs in the instant case already exceeds the point at which numerosity is presumed, it is clear that the proposed class is so numerous that joinder of all members is impracticable. Moreover, defendants do not oppose certification on grounds of numerosity. The Court finds that the numerosity prerequisite has been met.

*3. Commonality*

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The type of common question that is required for class certification is one that is of "such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Wal-Mart Stores, Inc. v. Dukes, 131 S.Ct. 2541, 2551 (2011). In

---

[8] The docket reflects that 111 "consent to join" forms have been submitted. Six of the forms appear to be duplicates, (ECF Nos. 165, 160, 154, 152, 134, 68), and one has been returned with a name of a defendant listed instead of the name of the opt-in plaintiff. (ECF No. 133.)

[9] The collective action sought employees who "(1) worked for any of the above-listed stores at any time from November 2, 2008 to the present; were a non-managerial employee who performed work related to the receipt, stocking, or sale of merchandise, or general maintenance/cleaning of the store; and (3) were either not paid the minimum wage or worked more than 40 hours per week and were not paid overtime at one-and-a-half times your regular hourly rate of pay for any work performed in excess of 40 hours per week." (Notice Of Pendency And Consent To Join Lawsuit, ECF No. 44 at 5.)

other words, "[w]hat matters to class certification ... is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." Id. (citing Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009) (alterations in the original)). Even a single common contention of this nature can suffice to satisfy the commonality requirement. Id. at 2556. "[C]ommonality does not mean that all issues must be identical as to each member," Padilla v. Maersk Line, Ltd., 271 F.R.D. 444, 448 (S.D.N.Y. 2010), therefore, the need for individualized proof of damages generally does not defeat commonality. Garcia v. Pancho Villa's of Huntington Vill., Inc., 281 F.R.D. 100, 106 (E.D.N.Y. 2011) (citing Damassia v. Duane Reade, Inc., 250 F.R.D. 152, 156 (S.D.N.Y. 2008)).

"In wage cases, the commonality requirement is usually satisfied where the plaintiffs allege that defendants had a common policy or practice of unlawful labor practices." Lewis v. Alert Ambulette Serv. Corp., 11-CV-442, 2012 WL 170049 (E.D.N.Y. Jan. 19, 2012) (citing Noble v. 93 University Place Corp., 224 F.R.D. 330, 343 (S.D.N.Y. 2004) ("All potential class members are alleged to have been harmed by a common practice—defendants' failure to adequately compensate employees for overtime hours. The legal theory set forth in Noble's Complaint is common to all class members—that this alleged failure to pay overtime violates New York's labor law. Accordingly, the commonality requirement is satisfied.")); see also Reid v. SuperShuttle Int'l, Inc., 08-CV-4854 JG VVP, 2012 WL 3288816 (E.D.N.Y. Aug. 10, 2012) (Common questions include "whether [defendant's] compensation policies violated the FLSA or the NYLL"); Poplawski v. Metroplex on the Atl., LLC, 11-CV-3765, 2012 WL 1107711 (E.D.N.Y. Apr. 2, 2012) ("There is sufficient proof for certification purposes of a uniform policy of underpayment, presenting a common question that is subject to classwide proof.").

I find that the proposed class was subject to the same allegedly discriminatory practice of underpayment, raising common questions of law and fact sufficient to warrant class certification. Such common questions include: (1) whether defendants failed to pay the putative class minimum wage in accordance with the NYLL; (2) whether defendants failed to pay the putative class overtime in accordance with the NYLL; (3) whether defendants failed to pay the putative class for each hour of work performed; and (4) whether defendants maintained accurate employment records.

Defendants' characterization of the named stores as "twenty-eight (28) separate and distinct [corporations], with their own management, policies, and procedures" is belied by the record. (Defs.' Opp'n. at 8.) As the Court noted in allowing this action to proceed as a collective action, each corporation named as defendant herein was owned and operated at least in part by defendant Srour. Rosario v. Valentine Ave. Disc. Store, Co., Inc., 828 F. Supp. 2d 508, 517 (E.D.N.Y. 2011). All defendants used the same payroll processing company to provide their employees' paychecks, and each defendant employed the same accountant. (Tr. Def. Srour, pp. 14, 16.) Likewise, the record demonstrates that defendants were not independently managed by their respective managers as defendants contend, but were operated under common ownership.[10] Employees who worked at different stores allege that they were subjected to the same payment policy by the various managers,[11] and defendants' payroll records demonstrate that employees

---

[10] According to defendant Srour, the defendant corporations were managed by four different individuals: Bahaeddin Eldana, Asi Nashmias, Santos Lopez, and David Dirzia. (See Srour Decl., ECF. No. 187-1.)

[11] Felicita Martinez worked at 146th Street Discount Center Co., Inc., (Martinez Decl. ¶ 1), which was managed by Santos Lopez Jr. (Santos Lopez Decl. ¶ 5, ECF 187-2.) Mercedes Mena worked at the Discount Center on 158 St., (Mena Decl ¶ 1), which was managed by Baheddin Eldana. (Eldana Decl. ¶ 19, ECF No. 187-4.) Jesus Guzman worked at El Mundo on Knickerbocker Rd., (Guzman Decl. ¶ 1), which was managed by Asi Nashmias. (Srour Decl. ¶ 28.)  Several of the opt-in plaintiffs, such as Andzie Kobina, Evangelisa Valerio, and Evelyn Alcantara Mesa, worked at American Place at 86th St., Inc, (ECF No. 189-8), managed by David Durzieh. (Durzieh Decl. ¶ 6, ECF No. 187-2.)

were moved between the defendant corporations regardless of which individual managed the store.[12]

While common ownership and management of the defendant corporations does not compel a finding of commonality, defendants' argument that plaintiff has failed to meet his burden of showing a common practice given that the defendants are separate and distinct corporations is without merit. While plaintiff has not produced declarations from employees of every named defendant corporation, the record contains declarations from employees alleging violations by ten out of the twenty defendant corporations that operated during the relevant period.[13] Cf. Rudd v. T.L. Cannon Corp., 10-CV-0591 (TJM)(DEP), 2011 WL 831446, at *11–12 (N.D.N.Y. Jan., 4 2011) (finding that plaintiffs did not establish commonality and typicality where the record contained references to the existence of an unlawful policy at "ten stores out of fifty-three New York locations"). Given the similarity of the practices described by the proposed class members, the Court finds that the proposed class was subjected to a uniform policy that

---

[12] The verified payroll record spread sheet provided by plaintiff, (ECF No. 189-6), which lists the payroll records defendants produced, reflects several such instances. For example, the records show that Rosa Gutierrez worked at Willis Avenue Discount Center, managed by Santos Lopez (Srour Decl. ¶ 40), as well as at American Place at Nostrand, Inc., managed by David Durzieh (Durzieh Decl. ¶ 3). Gina Asiedu worked at ElMundo of Knickerbocker Inc., managed by Asi Nashmias, (Srour Decl. ¶ 28) as well as at Grand Concourse Discount Inc., managed by Bahaeddin Eldana. (Eldana Decl. ¶ 4).

[13] There are twenty seven corporations named as defendants. According to defendant Srour, two of those corporations, American Place of Broadway, Inc. and ElMundo Holding Co. Inc., never operated stores. (Srour Decl. ¶ 8.) In addition, five corporations were dissolved prior to the time period relevant to this litigation, (Id. at ¶¶ 19–23.) Many of the defendant corporations share similar names, and several corporations merely replaced differently named corporations which operated at the same location. (See e.g., Srour Decl. ¶¶ 20, 22, 25.) Because many of the opt-in plaintiffs do not identify the stores at which they worked with enough specificity to identify which defendant is responsible, additional stores may be implicated by the submitted declarations. According to the spread sheet submitted by plaintiff, the declarations contain allegations regarding fourteen stores. (ECF No. 189-9.) Based on the employee declarations and attached payment records, the Court finds that the allegations concern a minimum of ten defendant stores: Valentine Avenue Discount Store, Co., Inc. (Rosario Decl. ¶ 4); Elmundo of 133rd Street, Inc. (Castillo Decl. ¶ 8); El Mundo of Jamaica, Inc. (Pacheco Decl. ¶ 1); El Mundo of Knickerbocker, Inc. (Mena Decl. ¶ 1); El Mundo of Southern Boulevard, Inc. (Id.); El Mundo of Steinway, Inc. (De La Cruz Decl. ¶ 8); 13th Avenue Bergament Home Center, Inc. (Guzman Decl. ¶ 1, ECF No. 190-5); 146 St. Discount Center Co. Inc., (Martinez Decl. ¶ 1); and 158 St.Discount Center Co., Inc. (Mena Decl. ¶ 1); Grand Concourse Discount Inc. (Rosario Decl. ¶ 10.)

existed across the different named corporations.[14] See e.g. Garcia v. Pancho Villa's of Huntington Vill., Inc., 281 F.R.D. 100, 106 (E.D.N.Y. 2011) (finding commonality where plaintiffs were employed by three separate restaurants because "there was ample evidence . . . of common ownership"); Cuzco v. Orion Builders, Inc., 262 F.R.D. 325, 334 n.20 (S.D.N.Y. 2009) (finding a common policy of pay practices based in part on the identical allegations made by other employees).

Whatever differences exist between the defendant corporations, they are nonetheless tied to each other by defendant Srour and the unlawful payment policy alleged by plaintiff. Plaintiff has demonstrated that employees of the defendant stores were prevented from documenting the full number of hours they worked, and that because they were either paid a flat rate or paid based on the number of hours they were permitted to record, the employees were denied the minimum wage and overtime premiums required by NYLL law. While some employees were not permitted to "clock in" after a certain number of hours and others were not permitted to "clock in" after a certain number of days, this variation does not defeat commonality. Likewise, that some employees were paid an hourly wage, while others were paid a weekly or daily wage does not defeat commonality. Rather, these variations both reflect defendants' general policy of underpaying their employees. "[C]laims by workers that their employers have unlawfully denied them wages to which they were legally entitled have repeatedly been held to meet the commonality prerequisite for class certification. Thus, commonality is satisfied here." Espinoza v. 953 Associates LLC, 280 F.R.D. 113, 127 (S.D.N.Y. 2011).

---

[14] Defendants attempt to defeat plaintiff's establishment of commonality and typicality by citing Eng-Hatcher v. Sprint Nextel Corp., 07 CIV 7350, 2009 WL 7311383 (S.D.N.Y. Nov. 13, 2009). However, this case is inapposite to the instant facts. In Eng-Hatcher, commonality was not satisfied where plaintiff relied on "limited anecdotal hearsay" to establish that two legal, corporate level policies interacted to create a de facto policy of underpayment at many of defendant's 1,200 locations. In contrast, plaintiff here alleges that defendants had an explicit policy of underpayment, and provides direct evidence, consisting of both payment records and employee declarations, supporting the existence of such a policy.

*4. Typicality*

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical" of the class. Fed. R. Civ. P. 23(a)(3). The typicality requirement "is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." Robidoux v. Celani, 987 F.2d 931, 936 (2d Cir. 1993). As a practical matter, the typicality requirement tends to merge with the commonality requirement discussed above "because [b]oth serve as guideposts for determining whether . . . the named plaintiff's claim and the class claims are so inter-related that the interests of the class members will be fairly and adequately protected in their absence." Caridad v. Metro-N. Commuter R.R., 191 F.3d 283, 291 (2d Cir. 1999) (quoting Falcon 457 U.S. at 157 n.13) (alterations in original). "The typicality requirement is not satisfied and class certification is inappropriate, however, where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." Briceno v. USI Services Group, Inc., 09-CV-4252 (JS) (AKT) , 2012 WL 4511626 (E.D.N.Y. Sept. 28, 2012) (citing Denney v. Deutsche Bank AG, 443 F.3d 253, 268 (2d Cir. 2006)) (internal quotations omitted).

The Court finds that plaintiff Rosario's claims are typical of the proposed class members' claims. Plaintiff alleges that he was not paid minimum wage or an overtime premium, and argues that this payment practice violates the NYLL. Plaintiff's factual allegations and legal arguments apply to the proposed class across the board to all employees who have been denied minimum wage and overtime pay. That the individual class members were employed by different stores and performed different tasks does not defeat typicality, nor does it matter, as defendant argues,

that plaintiff Rosario worked for only some of the defendant stores.[15] C.f. Iglesias-Mendoza v. La Belle Farm, Inc., 239 F.R.D. 363, 371 (S.D.N.Y. 2007) ("the fact that the named plaintiffs worked with one kind of animal while other class members worked with another kind of animal, or that the named plaintiffs worked on feeding while other class members worked on slaughtering or packaging, is not a distinction that makes a difference"). Plaintiff Rosario is subject to no unique defenses,[16] and the typicality requirement has been satisfied.

*5. Adequacy of Representation*

Rule 23(a)(4) requires the Court to find that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Therefore, a class representative must "possess the same interest and suffer the same injury as the class members." Amchem Products, Inc. v. Windsor, 521 U.S. 591, 625 (1997) (internal quotations omitted). Furthermore, "the proposed class representative must have an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of other class members." Denney v. Deutsche Bank AG, 443 F.3d 253, 268 (2d Cir. 2006). "Courts that have denied class certification based on the inadequate qualifications of plaintiffs have done so only in flagrant cases, where the putative class representatives display an alarming unfamiliarity with the suit, display an unwillingness to learn about the facts underlying their claims, or are so lacking in credibility that they are likely to harm their case." In re Frontier Ins. Group, Inc. Sec. Litig., 172 F.R.D. 31, 47 (E.D.N.Y. 1997) (internal citations omitted). Moreover, "[a] conflict, or potential

---

[15] Defendants mistakenly assert that plaintiff claims to have only worked for two of the defendant stores. (Defs.' Opp'n at 8.) However, plaintiff claims to have worked for three of the defendant stores, as discussed in footnote 1, *infra*.

[16] Defendants, in their answer, raise the affirmative defense that plaintiff was a supervisory employee. However, as defendants do not offer any basis for this defense, or argue that it precludes a finding of typicality, the Court is satisfied that plaintiff Rosario is not subject to any defense that would defeat typicality.

conflict, will defeat class certification only if that conflict is fundamental. <u>Denney</u> 443 F.3d at

268 (citing <u>In re Visa Check/MasterMoney Antitrust Litig.</u>, 280 F.3d 124, 145 (2d Cir. 2001).

Plaintiff's counsel argues that plaintiff has demonstrated his commitment to this case by

assisting with the preparation of pleadings, reviewing documents produced by defendants, and

producing responsive documents. (Pl.'s Mem. of Law, at 22.) Plaintiff has sustained his

involvement in this case for the nearly two and a half years since the action was commenced. To

the extent that some of the class members may not have opted-in to the FLSA collective action,

merely because plaintiff has pursued additional FLSA claims does not create a conflict.

Plaintiff's  interest in his wage and hour claims is the same as the proposed class members; the

claims of all class members will require the same bases of proof to sustain the same legal theory.

Furthermore, while plaintiff Rosario's two declarations contain slight differences, the

discrepancies do not undermine plaintiff's adequacy as a class representative. Defendants do not

oppose a finding of adequacy and the record does not suggest that plaintiff would be inadequate.

The Court therefore finds that Julian Rosario will adequately represent the absent class

members.[17]

*6. Rule 23(b)(3)*

Rule 23(b)(3) states that a class action may be maintained if: "the court finds that the

questions of law or fact common to class members predominate over any questions affecting

only individual members, and that a class action is superior to other available methods for fairly

and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This requirement "ensures

that the class will be certified only when it would 'achieve economies of time, effort, and

expense, and promote ... uniformity of decision as to persons similarly situated, without

---

[17] The adequacy of representation inquiry also requires the Court to determine whether "plaintiff's attorneys are qualified, experienced and able to conduct the litigation." <u>Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.</u>, 222 F.3d 52, 60 (2d Cir. 2000). Counsel's adequacy is discussed in section E, infra.

sacrificing procedural fairness or bringing about other undesirable results.'" <u>Cordes & Co. Fin. Services, Inc. v. A.G. Edwards & Sons, Inc.</u>, 502 F.3d 91, 104 (2d Cir. 2007) (alteration in original) (citing <u>Amchem</u>, 521 U.S. at 615).

*i. Predominace*

The Rule 23(b)(3) predominance inquiry is a stricter version of the Rule 23(a) commonality requirement and "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem, 521 U.S. at 623. "Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." <u>Moore v. PaineWebber, Inc.</u>, 306 F.3d 1247, 1252 (2d Cir. 2002) (citing <u>In re Visa Check/Master Money Antitrust Litig.</u>, 280 F.3d at 136). "When determining whether common questions predominate, courts focus on whether questions of liability are common to the class members." <u>Poplawski v. Metroplex on the Atl., LLC</u>, 11-CV-3765, 2012 WL 1107711 (E.D.N.Y. Apr. 2, 2012) (citations omitted). "In the majority of wage cases, 'if plaintiffs establish that defendant had a practice or policy of failing to pay prevailing wages, defendant's liability to all class members will be established.'" <u>Id.</u> at *10 (citing <u>Ramos v. SimplexGrinnell LP</u>, 796 F.Supp.2d 346, 359 (E.D.N.Y.2011)) ; <u>see also</u> <u>Bolanos v. Norwegian Cruise Lines Ltd.</u>, 212 F.R.D. 144, 148 (S.D.N.Y. 2002) ("If Plaintiffs are successful in establishing a uniform practice or scheme to deprive Defendant's employees of overtime wages, that may constitute a significant step towards establishing liability to all class members.").

Class-wide issues predominate in the instant case. Plaintiff contends that defendants had a uniform practice of paying employees below minimum wage, and of not paying overtime wages.

> The issues to be litigated are whether the class members (1) were supposed to be paid the minimum wage as a matter of law and were not, and (2) were supposed to be paid overtime for working more than 40 hours a week and were not. These are about the most perfect questions for class treatment.

Iglesias-Mendoza v. La Belle Farm, Inc., 239 F.R.D. 363, 373 (S.D.N.Y. 2007); see also Garcia, 281 F.R.D. at 108 ("predominance is satisfied where, as here 'the central issue is whether the defendants had a uniform policy or practice of denying overtime and spread-of-hours compensation to its employees'") (citing Guzman, No. 07-CV-1126 (JG)(RER) 2008 WL 597186, at *8 (E.D.N.Y. Mar. 2, 2008)). Whether defendants maintained unlawful payment practices can be established through the employees' testimony, the testimony of defendant Srour, and by the individual managers. The question of whether class members were properly paid can be addressed by class-wide proof regarding the accuracy of defendants' payroll records, defendants' financial records, and testimony.[18]

While each class member will have different damages depending on the length of time they were employed, the wages they received, and the hours they worked, such questions do not defeat predominance.

> There are a number of management tools available to a district court to address any individualized damages issues that might arise in a class action, including: (1) bifurcating liability and damage trials with the same or different juries; (2) appointing a magistrate judge or special master to preside over individual damages proceedings; (3) decertifying the class after the liability trial and providing notice to class members concerning how they may proceed to prove damages; (4) creating subclasses; or (5) altering or amending the class.

---

[18] Defendants allege that the defendant corporations kept individual bank accounts and payroll records. (Durzieh Decl; Eldana Decl; Lopez Decl). The existence of separate bank accounts held by the defendant corporations does not defeat predominance any more than if one corporation held multiple bank accounts. The class claims do not have to be established by only one source of proof, but rather by generalized proof.

In re Visa Check/Master Money Antitrust Litig., 280 F.3d at 141. The district court can utilize a number of tools to manage the individualized damages issues in the class. Class wide issues predominate here and if necessary, the Court may use various tools to manage the individualized damages issues in the class.

*ii. Superiority*

In determining whether a "class action is superior to other available methods for the fair and efficient adjudication of the controversy," courts are guided to consider four nonexclusive factors, including:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed.R.Civ.P. 23(b)(3)(A)-(D).

Here, a class action is the superior method of adjudicating the class claims. There is no evidence in the record of any other litigation regarding these claims and parties in any other court, and the fact that the Court has already certified this matter as a collective action goes a long way toward establishing superiority "given that the New York Labor Law claims are nearly identical to the FLSA claims. . . ." Poplawski, 2012 WL 1107711, at *12 (citing Garcia, 2011 WL 6287932, at *7); see also Damassia v. Duane Reade, Inc., 250 F.R.D. 152, 162-63 (S.D.N.Y. 2008) ("In an overtime case brought under both the NYLL and the FLSA, the 'factual overlap between the federal claims and the state claims is virtually total,' so it would 'ill serve the

interests of convenience or judicial economy to relitigate in state court the defendants' pay practices.'"). Although defendant Srour now alleges that a majority of the defendant corporations were "of" locations outside the Eastern District of New York, (See Srour Decl. ¶¶ 19–40), according to plaintiff's complaint and the affirmations in defendants' answer, defendant Srour resides in this district and a majority of the corporations had a principal place of business here. (Pl.'s Compl. ¶¶ 8-34, 36.) There is nothing in the record which would suggest the undesirability of adjudicating the claims in this forum, nor are there likely to be difficulties in managing a class action. I therefore find that a class action is a superior method of adjudicating the class claims.

**E. Class Counsel**

Pursuant to Rule 23(g), a court that certifies a class must appoint class counsel.[19] Plaintiff requests that plaintiff's counsel be appointed to represent the class. (Pl.'s Mem. of Law, at 26.) According to the declaration submitted by Abby H. Natelson, Esq.,[20] the Law Office of Borrelli and Associates, P.L.L.C. has extensive experience in litigating complex employment cases, as well as cases focusing on employment law and wage and hour issues. (Natelson Decl. ¶ 2, ECF No. 189.) Additionally, the Law Office of Borrelli and Associates, P.L.L.C. has over one dozen wage and hour class and collective action cases currently pending in the Eastern and Southern Districts of New York. (Id.) The Court also notes that counsel has done significant work in litigating this matter up until this point. Based on the resources counsel has already invested in

---

[19] In appointing class counsel, the Court "must consider:"
    (i) the work counsel has done in identifying or investigating potential claims in the action;
    (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
    (iii) counsel's knowledge of the applicable law; and
    (iv) the resources that counsel will commit to representing the class[.]
Fed. R. Civ. P 23(g)(a)(i)–(iv). The Court may also consider several other factors by rule.
[20] Natelson, formerly employed by Borrelli and Associates, has since left the firm and is no longer representing plaintiff in this matter. (ECF No. 181.) The law firm of Borrelli and Associates continues to represent plaintiff in this matter, and attorneys from the firm, including Alexander T. Coleman and Dana Z. Stecker, have filed notices of appearance on plaintiff's behalf. The docket sheet also reflects that several other attorneys from the firm, including Michael J. Borrelli, are listed as attorneys to be noticed.

this matter, and the quality of the work performed on plaintiff's behalf, the Court finds that the Law Office of Borrelli and Associates, P.L.L.C. is an appropriate class representative.

## CONCLUSION

Accordingly, I respectfully recommend that plaintiff's motion to certify the proposed class should be granted. I also recommend that the Law Office of Borrelli & Associates should be appointed class counsel. The parties shall submit a joint proposed notice pursuant to Fed. R. Civ. P. 23(c)(2)(B) within fourteen days of class certification in the event this Report and Recommendation is adopted.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital District Physician's Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Secretary of Health and Human Services, 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

_____/S/_____
LOIS BLOOM
United States Magistrate Judge

Dated: May 31, 2013
Brooklyn, New York