| UNITED STATES DISTRICT COURT | NOT FOR PUBLICATION |
| EASTERN DISTRICT OF NEW YORK | |

JULIAN ROSARIO, *on behalf of himself and all others similarly situated*,

                      Plaintiff,

– against –

VALENTINE AVENUE DISCOUNT STORE, CO., et al.,

                      Defendants.

**MEMORANDUM & ORDER**

10-CV-5255 (ERK)(LB)

KORMAN, J.:

Judge Bloom has recommended that plaintiff Julian Rosario's motion to certify the proposed class be granted and that the Law Office of Borrelli & Associates be appointed class counsel. Report and Recommendation ("R&R") at 21, ECF No. 191.[1] In this Memorandum and Order, I assume familiarity with the R&R and discuss defendants' objections thereto. Upon *de novo* review, I adopt the recommendation.

## I.    *Commonality and Typicality*

Defendants argue that Judge Bloom erred in holding that Rosario adequately established the class's commonality and typicality. Def. Obj. at 3-5, ECF No. 195; *see also* R&R at 9-15 (commonality and typicality analyses). First, defendants argue that Rosario has failed "to support his attempt to establish a 'common policy or practice' among the corporate defendants" because there are twenty-eight "different corporate defendants, which are not tied to each other by Mr. Srour[,]" each "with their own management, policies, and procedures." Def. Obj. at 4.[2] In addition, defendants claim that "these corporate defendants maintained their own distinct bank

---

[1] *Rosario v. Valentine Ave. Disc. Store, Co., Inc.*, No. 10 CV 5255, 2013 WL 2395288 (E.D.N.Y. May 31, 2013).
[2] There are actually only twenty stores at issue because two of the corporations never operated stores and five of the corporations were dissolved prior to the time period relevant to this case. R&R at 12 & n. 13.

accounts, were each individually responsible for hiring and firing employees, set their own hours, had separate leases, separate vendors and separate payroll accounts through the Paychex payroll company." Def. Obj. at 4.[3]  There are no citations to the record in support of these claims.

The R&R rejected these arguments and concluded that "[w]hatever differences exist between the defendant corporations, they are nonetheless tied to each other by defendant Srour and the unlawful payment policy alleged by plaintiff." R&R at 13. Judge Bloom also confronted this issue in her decision on Rosario's motion for conditional certification as a collective action under the Fair Labor Standards Act ("FLSA"). There, Judge Bloom observed that although "[t]he Stores are independently incorporated[,]" "Defendant Srour serves as the chairman or chief executive officer of each of the Stores." *Rosario v. Valentine Ave. Disc. Store, Co., Inc.*, 828 F. Supp. 2d 508, 512 (E.D.N.Y. 2011) (citing Compl. ¶¶ 8-34, ECF No. 1; Ans. ¶¶ 8-34, ECF No. 5). In addition, she noted that Rosario "alleges that the Stores are commonly owned and managed, and operate as a chain of twenty-seven department stores." *Id*. (citing Compl. ¶ 35).[4] Indeed, Judge Bloom observed in the R&R that "defendants' payroll records demonstrate that employees were moved between the defendant corporations regardless of which individual managed the store." R&R at 12; *see also* R&R at 12 n.12 (discussing employee who worked at four different stores with four different managers); *Rosario*, 828 F. Supp. 2d at 512-513 (discussing another employee who worked at six different stores). Because defendants offer nothing beyond mere assertions to contradict Judge Bloom's observations and conclusions on this issue, their arguments cannot prevail.

---

[3] Addressing the identical argument in the context of predominance under Rule 23(b)(3), Judge Bloom held that "[t]he existence of separate bank accounts held by the defendant corporations does not defeat prominence any more than if one corporation held multiple bank accounts" because "[t]he class claims do not have to be established by only one source of proof, but rather by generalized proof." R&R at 18 n.18.

[4] As noted above, it is now clear that there are actually only twenty stores at issue. R&R at 12 & n. 13.

Second, defendants argue that the commonality and typicality have not been established because the putative class members' "claims arise from different events relating to different allegations of injuries, such as: allegations of timecard limitations based on varying number of hours, timecard limitations on days worked, inappropriate payroll deductions, claims of flat rate versus hourly pay rates, for workers with duties varied as general store workers, those with responsibility for opening and closing the store, to cashiers." Def. Obj. at 4. In support of this argument, defendants rely upon *Eng-Hatcher v. Sprint Nextel Corp.*, No. 07 Civ. 7350, 2009 WL 7311383 (S.D.N.Y. Nov. 13, 2009) (Jones, J.). In that case, the plaintiff moved for certification of a class of all non-exempt hourly employees at more than forty retail stores who were not paid for all the hours they worked or were not paid overtime they accrued. The court denied the motion because the plaintiff "failed to offer sufficient evidence that her theory of a *de facto* policy existed at other stores in New York" and that "[e]ven if Plaintiff is able to prove that her managers chose to violate Defendant Sprint's policy and require that she work off-the-clock, she fails to establish that this policy was uniformly applied across the state to all class members." *Id*. at *6. Here, there is substantial evidence that such a policy was applied widely. Specifically, as discussed above, the R&R and Judge Bloom's prior decision cite numerous examples of employees who worked at more than one store and were subject to the same policy at each store. In addition, the record is far more developed than that which Judge Jones was faced with in *Eng-Hatcher*. There, only the named plaintiff had submitted information regarding her experience at only one store out of more than forty. In contrast, the current "allegations [in this case] concern a minimum of ten stores" out of the twenty at issue, R&R at 12 n.13, at least 104 individuals have consented to join the related FLSA collective action, R&R at 9 n.8, and Rosario has

submitted information regarding his experiences at all three stores at which he worked, R&R at 4 n.1.[5]

Third, defendants argue that "plaintiffs have not established commonality and typicality in this matter" because "allegations were made against only ten (10) corporate defendants."[6] In support of this argument, defendants rely upon *Rudd v. T.L. Cannon Corp.*, No. 3:10-CV-0591, 2011 WL 831446 (N.D.N.Y. Jan. 4, 2011) (Peebles, J.), *adopted*, 2011 WL 830636 (N.D.N.Y. Mar. 3, 2011) (McAvoy, J.). In that case, five named plaintiffs brought suit against the operators of fifty-three chain restaurants for violations of the New York Labor Law ("NYLL"). Judge Peebles observed that "[w]hile plaintiffs' amended complaint suggests the existence of policies or offending practices under the [NYLL] extending to all of the defendants' restaurants, each of the named plaintiffs was principally employed at a single [restaurant] location[.]" *Id*. at *11. In addition, Judge Peebles observed that four of the plaintiffs' affidavits "reference working at other of defendants' locations where similar practices apply . . . for a total of ten stores out of the fifty-three locations." *Id*. After weighing "the competing evidence" in the form of affidavits from nine managers of nine different locations, "all of whom dispute that the unlawful practices alleged have occurred in their locations[,]" and in the form of a declaration submitted by the company's director of human resources, "in which she states that defendants' New York locations are managed by different individuals with varying levels of experience, have different sales volumes, and are not identical in size[,]" he concluded "that plaintiffs have failed to establish by a preponderance of the evidence that they can meet the requirements of commonality and typicality[.]" *Id*. at *12.

---

[5] Judge Bloom also distinguished *Eng-Hatcher*. *See* R&R at 13 n.14.
[6] Defendants argue that, "[i]n the alternative, the other seventeen corporate defendants should be dismissed from the case." Def. Obj. at 5.

4

While *Rudd* involved specific allegations against merely ten out of fifty-three locations, this case involves specific allegations against "a minimum of ten stores" out of only twenty locations at issue. R&R at 12 & n.13. Unlike *Rudd*, all twenty locations in this case share a chairman or chief executive officer, and each was managed by one of only four individuals. R&R at 11 n.10; *Rosario*, 828 F. Supp. 2d at 512. Although all four managers have submitted categorical (and nearly identical) denials that any violation of the NYLL occurred in their stores, there is no reference in the record to any human resources employees, or any corporate policy regarding such matters. Moreover, unlike in *Rudd*, defendants have not argued that the sales volume or size varied meaningfully among the twenty stores at issue.

## II.    *Adequate Representation*

Defendants argue that Rosario's interests "are not aligned with those of the opt-in plaintiffs" because "[o]nly one opt-in plaintiff worked at one of the same corporate defendants as the named plaintiff" and "[a]ll other opt-in plaintiffs worked at one or more of the other corporate defendants who are distinct from each other[.]" Nevertheless, defendants never argued before Judge Bloom that Rosario is an inadequate class representative. *See* R&R at 16 ("Defendants do not oppose a finding of adequacy[.]"). "Defendants may not now raise new arguments that the magistrate judge did not have an opportunity to consider when drafting her R & R." *Fisher v. O'Brien*, No. 09-CV-42, 2010 WL 1286365, at *1 (E.D.N.Y. Mar. 30, 2010) (Amon, J.).[7] Thus, this argument, for which defendants cite no authority, is waived.

---

[7] *Accord Illis v. Artus*, No. 06-CV-3077, 2009 WL 2730870, at *1 (E.D.N.Y. Aug. 28, 2009) (Townes, J.). There is split among the circuits on this point of law and the Second Circuit has not yet addressed it. While the First, Fifth, Ninth and Tenth Circuits have held that such waiver occurs, the Fourth and Eleventh Circuits have disagreed. 13 Alan Wright, Arthur R. Miller, Edward H. Cooper & Richard D. Freer, *Federal Practice and Procedure* § 3505 n.23 (3d ed. 2013); *see also Amadasu v. Ngati*, No. 05-CV-2585, 2012 WL 3930386, at *5-7 (E.D.N.Y. Sept. 9, 2012) (Mauskopf, J.) (discussing circuit split and holding waiver occurred).

### III.     Rule 23(b)(3) Requirements

First, defendants argue that plaintiffs have not satisfied the "predominance" inquiry because "the multiple corporate defendants in this case were managed and controlled by different people, managed differently, had their own distinct policies and followed their own individual procedures." Def. Obj. at 6-7. Defendants do not cite any evidence in the record to support these assertions. Indeed, as discussed above, the twenty stores at issue all shared a chairman or chief executive and were each managed by one of only four individuals. R&R at 11 n.10; *Rosario*, 828 F. Supp. 2d at 512. Moreover, the allegations include numerous examples of employees being moved between the various stores frequently, and being subjected to the same policies at each store at which they worked. R&R at 12 & n.12.

Second, defendants argue that plaintiffs have not satisfied the "superiority" inquiry because "there are twenty-seven corporate defendants, and varying types of claims against such defendants" which will require "various mini-trials to adequately resolve this action." Def. Obj. at 7.[8] In support of this argument, defendants rely upon *Potchin v. Prudential Home Mortg. Co., Inc.*, No. 97-CV-525, 1999 WL 1814612 (E.D.N.Y. Nov. 12, 1999) (Amon, J.). In that case, two plaintiffs brought suit against a mortgage lender for alleged violations of the federal Real Estate Settlement Procedures Act ("RESPA"). Judge Amon denied the named plaintiffs' motion to certify a class because, *inter alia*, they failed to establish the predominance of common over individual questions. *Id.* at *9-10. Specifically, Judge Amon observed that to prove the alleged violations of RESPA, "each plaintiff . . . will have to (1) document the nature and value of any goods, facilities or services that were actually furnished by the mortgage broker; and (2) show that the value of the total payments to the broker was not reasonably related to the value of the

---

[8] As noted above, there are actually only twenty stores at issue. R&R at 12 & n. 13.

goods, facilities or services provided, (3) in part by comparison to 'prices structures and practices in similar transactions and in similar markets.'" *Id*. at *9 (citation omitted).

*Potchin* is not applicable to the instant case for several reasons. First, defendants cite to *Potchin* to support their argument regarding "superiority," despite the fact that Judge Amon did not reach that inquiry and instead based her holding on the "predominance" inquiry. Second, *Potchin* did not involve claims under the NYLL, and RESPA is not analogous to the NYLL. As Judge Amon's explanation of what is required to prove a violation of RESPA makes clear, *Potchin* involved highly individualized and context-specific inquiries into each transaction by each plaintiff, including a comparison to the manner in which similar transactions are dealt with by others in the marketplace. *See id.* at *9. Unlike *Potchin*, there are clear common questions that predominate in this case: "(1) whether defendants failed to pay the putative class minimum wage in accordance with the NYLL; (2) whether defendants failed to pay the putative class overtime in accordance with the NYLL; (3) whether defendants failed to pay the putative class for each hour of work performed; and (4) whether defendants maintained accurate employment records." R&R at 11. Third, Judge Amon observed in *Potchin* that many other courts have concluded that RESPA claims are categorically inappropriate for certification as class actions. *See id*. at *9 (collecting cases). Unlike RESPA claims, courts in this district have made clear that in a case such as this, "where a collective action under the FLSA that is based on the same set of facts has been approved there is an inclination to grant class certification of state labor law claims." *Morris v. Alle Processing Corp.*, No. 08-CV-4874, 2013 WL 1880919, at *5 (E.D.N.Y. May 6, 2013) (Azrack, J.) (quoting *Garcia v. Pancho Villa's of Huntington Vill., Inc.*, 281 F.R.D. 100, 104-05 (E.D.N.Y. 2011) (Boyle, J.)); *see also*, *e.g.*, R&R at 7 (same); *Poplawski v. Metroplex on the Atlantic, LLC*, No. 11-CV-3765, 2012 WL 1107711, at *5 (E.D.N.Y. Apr. 2, 2012) (Weinstein, J.) (same).

## CONCLUSION

I adopt the recommendation that plaintiff's motion to certify the proposed class be granted and that the Law Office of Borrelli & Associates be appointed class counsel.

**SO ORDERED.**

Brooklyn, New York
August 30, 2013

/s/
Edward R. Korman
Senior United States District Judge